IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED PROPERTY, INC.,<br><br>PLAINTIFF,<br><br>VS.<br><br>ROYALSTAR ASSURANCE LTD.,<br><br>DEFENDANT. | CASE NO. 3:26-CV-19 |

ROYALSTAR'S PARTIAL MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM

RoyalStar Assurance, Ltd. ("RoyalStar") moves to dismiss Counts II and III of the Complaint as well as the demand for punitive damages pursuant to Fed. R. Civ. P. 12(b)(6).[1]

Count II should be dismissed because:

1. The claim for bad faith denial of insurance coverage is barred on the face of the Complaint by the two-year statute of limitations.

2. It fails to plausibly plead a claim for bad faith denial of insurance coverage.

Count III should be dismissed because:

1. Although labeled "breach of duty of good faith and fair dealing," it pleads the elements of a tort: bad faith denial of insurance coverage. Because the source

---

[1] Pursuant to FED. R. CIV. P. 12(a)(4)(A), the time to answer the remaining count(Count I) is tolled pending the court's ruling on this motion.

of the duty controls the limitations period, Count III is governed by the same two-year period that bars Count II.

2. In the alternative, Count III is non-cognizable because there is no *implied* covenant of good faith when 22 V.I.C. § 2 actually imposes the duty.

3. Count III also fails to plausibly plead a claim for bad faith denial of coverage.

The punitive damages demand should be dismissed because

1. Plaintiff fails to plausibly plead a claim for punitive damages.

2. Once Counts II and III are dismissed, the only surviving count is the claim for breach of contract, and punitive damages are not available for breach of contract.

## I.   RELEVANT ALLEGATIONS

Plaintiff, United Property, Inc., alleges that on September 17, 2022, its commercial property in St. Thomas was damaged by a windstorm. Compl. ¶10. Plaintiff belatedly reported the loss (*see* Exh. B to the complaint), and RoyalStar opened a claim and assigned it to Sedgwick Claims Management Services, Inc. for handling. Compl. ¶¶11-13. On November 9, 2023, Sedgwick informed Plaintiff that RoyalStar had concluded the Policy did not provide coverage for the claim and denied the claim. Compl. ¶14 & Exh. B.

Count II of the Complaint asserts a tort claim for bad faith. It alleges that RoyalStar acted intentionally, without any reasonable basis in fact or law, and with reckless indifference to Plaintiff's rights as a policyholder. Compl. ¶¶43-45. Count III asserts a claim for breach of the implied covenant of good faith and fair dealing and

that RoyalStar breached this obligation. Compl. ¶¶51-53. Plaintiff initiated the action on January 13, 2026.

## II. LEGAL STANDARD

A statute-of-limitations defense may be raised on a Rule 12(b)(6) motion when "the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Dismissal is proper when the bar is apparent on the face of the complaint. *Id.* Here, Plaintiff's own pleading establishes both the accrual date (November 9, 2023) and the filing date (January 13, 2026), placing the limitations question squarely on the face of the Complaint.

Virgin Islands substantive law supplies the statute of limitations. *Codrington v. Steadfast Insurance Co.*, No. 1:19-cv-00026, 2023 WL 6627210 (D.V.I. 2023) ("A federal court must apply the substantive laws of its forum state in diversity actions, and these include state statutes of limitations.") (citing *Stephens v. Clash*, 796 F.3d 281, 289 (3d Cir. 2015)); *see also MRL Development I, LLC v. Whitecap Investment Corp.*, 823 F.3d 195, 202 (3d Cir. 2016) (*Erie* federalism principles apply to the District of the Virgin Islands).

## III. COUNT II IS BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS

### A. THE TWO-YEAR STATUTE OF LIMITATIONS GOVERNS THE TORT OF INSURER BAD FAITH

The two-year tort limitations period in 5 V.I.C. § 31(5)(A) governs claims for bad faith and breach of fiduciary duty in the insurance context. *Clark v. Fidelity &*

*Guaranty Insurance Underwriters*, 2025 V.I. 15 (Aug. 20, 2025). The *Clark* court reasoned that although the insurer-insured relationship arises from a contract, the duties underlying a bad faith claim are statutory rather than not contractual. Specifically 22 V.I.C. § 2 requires all persons engaged in the business of insurance to act in "good faith, abstain from deception, and practice honesty and equity in all insurance matters." Because the duties exist independently of the contract, the court held, "the two-year statute of limitations applies." *Clark*, 2025 V.I. 15 at ¶26.

That holding is dispositive here. Count II is a bad faith claim: Plaintiff alleges RoyalStar intentionally refused to pay the claim, knew there was no reasonably legitimate or arguable basis for the refusal, and acted with reckless indifference. Compl. ¶¶43-45. That is the same tort the Virgin Islands Supreme Court addressed in *Clark*, and the same two-year period applies.

### B.   THE LIMITATIONS PERIOD ACCRUED ON NOVEMBER 9, 2023, THE DATE OF ROYALSTAR'S DENIAL OF COVERAGE

The *Clark* court held that "[i]n cases involving a bad faith denial of insurance coverage, the limitations period accrues at the time of the insurer's initial denial of coverage," and that even where the denial is later reiterated, it "constitutes a singular, permanent act and not a recurring injury." *Id*. This Court reached the same conclusion in *Codrington v. Steadfast Insurance Co.*, No. 1:19-cv-00026, 2023 WL 6627210, *6 (D.V.I. 2023), report and recommendation adopted, 2023 WL 6356674 (D.V.I. Sept. 29, 2023), *aff'd*, No. 23-2949, 2024 WL 3493449 (3d Cir. July 22, 2024), holding that the bad faith claim accrued no later than the date of the insurer's denial letter.

Plaintiff alleges that "on November 9, 2023, Sedgwick informed the Plaintiff that after careful review of all available information, Defendant concluded that the Subject Policy did not provide coverage for the claim and denied coverage for the loss." Compl. ¶14.[2] The two-year period therefore expired on November 9, 2025. Plaintiff filed this action on January 13, 2026—more than two months after the limitations period expired. Count II is, on the face of the Complaint, time-barred.

## IV. EVEN IF COUNT II WERE TIMELY, IT FAILS TO PLAUSIBLY PLEAD BAD FAITH

### A. THE *IQBAL/TWOMBLY* PLAUSIBLE PLEADING STANDARD

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint removed to federal court must comply with the plausible pleading rules, even when removed from a notice pleading jurisdiction. *Petrusovich v. Clinical Reference Lab'y, Inc.*, No. CV 22-05479 (SRC), 2022 WL 16922192, at *2 (D.N.J. Nov. 14, 2022).

Assessing the plausibility of a pleading is a three-step process: (1) identify the elements the plaintiff must plead; (2) identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) determine whether the remaining well-pleaded factual allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

---

[2] The denial letter is attached to the Complaint as Exhibit B.

A court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." M*ayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Where an exhibit to the complaint contradicts the complaint, the exhibit controls. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir.1994).

To plead insurer bad faith under Virgin Islands law, a plaintiff must allege:

1.  the existence of an insurance contract and breach by the insurer;

2.   intentional refusal to pay the claim;

3.  the non-existence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact;

4.  the insurer's knowledge of the absence of such a debatable reason *or* an intentional failure of the insurer to determine the existence of a debatable reason.

*Justin v. Guardian Ins. Co.*, 670 F. Supp. 614, 617 (D.V.I. 1987)[3]; *see also Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 573 (D.V.I. 2004) (applying the same elements).

### B.    COUNT II'S ALLEGATIONS ARE CONCLUSORY AND AFFIRMATIVELY CONTRADICTED BY THE DENIAL LETTER

Stripped of legal conclusions, Count II rests on three conclusory recitations: that RoyalStar's "conduct was intentional"; that RoyalStar "had no reasonable basis, in fact

---

[3] *Justin* puts the alternative basis listed in item 4 as a fifth element. Because the fifth element as used in *Justin* is an alternative to the fourth element, it makes more sense to list them together as alternatives.

or law, for its actions and Defendant knew or should have known that this was true"; and that RoyalStar's "actions were outrageous and done with evil motive and/or reckless indifference." Compl. ¶¶43-45. These are bare recitations of the third and fourth elements of the tort of bad faith, unsupported by any factual content. Under *Iqbal* step two, they are not entitled to the assumption of truth.

What remains, after the conclusory allegations are set aside, cannot plausibly establish that RoyalStar lacked any arguable basis for denying coverage. To the contrary, the denial letter attached to the Complaint as Exhibit B—and incorporated by reference in Paragraph 14—affirmatively demonstrates that RoyalStar had multiple, independent,reasonable bases for its denial.

First, the denial letter explains that Sedgwick retained a professional engineer, who inspected the property and concluded that the damage was "due to lack of maintenance and poor construction practices," with rotted timber roof framing "not due to any wind or water intrusion on the [date of loss], but . . . a result of long-term deterioration due to wet conditions over time," and rusting cable supports "not due to the wind and water conditions on the [date of loss], but due to a long-term corrosion issue." Compl. Ex. B at 5-6. The engineer further concluded that "the observed damage to the building is a result of worn roofing and lack of maintenance to the structure." *Id.* at 6. An engineer's professional opinion that damage is due to pre-existing deterioration rather than a windstorm is the paradigm of a "reasonably legitimate or arguable reason" for denial. Whether the engineer's conclusions are ultimately correct on the merits is a coverage question for another day. The existence of those

conclusions, sourced to a retained licensed professional, defeats any inference that RoyalStar had "no reasonable basis, in fact or law," for its denial.

Second, the denial letter asserts that "[e]ven if the damages observed could be attributed to windstorm, the estimated repair cost would not exceed the windstorm deductible of $20,718.75 [$414,375.00 X 5% = $20,718.75]." Compl. Ex. B at 6. The Policy itself, attached as Exhibit A, confirms the 5% windstorm deductible on a $414,375 sum insured. Compl. Ex. A. A deductible analysis grounded in policy terms and arithmetic is, at minimum, an arguable reason for denial.

Third, the denial letter asserts that RoyalStar's "ability to adjust this claim has been substantially prejudiced by the failure to provide 'prompt notice of the loss or damage' as required by the Subject Policy." Compl. Ex. B at 6. Whether the late-notice defense ultimately succeeds is irrelevant at the pleading stage; that it is arguable suffices.

Plaintiff pleads no facts that would plausibly defeat any of these three bases. The Complaint contains no factual allegations contradicting the engineer's conclusions; no factual allegations addressing the deductible calculation; and no factual allegations addressing the late-notice rationale. A claim for the tort of bad faith cannot survive Rule 12(b)(6) where the plaintiff's own incorporated exhibit demonstrates that the insurer had arguable reasons for its denial and the plaintiff does not plausibly allege otherwise.

### C.   THE COMPLAINT LIKEWISE FAILS TO PLAUSIBLY PLEAD THE ALTERNATIVE "INTENTIONAL FAILURE TO INVESTIGATE" PRONG

The fourth element of the tort provides an alternative path to liability where the plaintiff alleges that the insurer *intentionally* avoided determining whether a debatable reason existed. That path is foreclosed by the Complaint's own allegations.

As noted, Plaintiff pleads that RoyalStar did investigate—through a retained licensed engineer who inspected the Property with Plaintiff's cooperation. No facts are pled to suggest that RoyalStar intentionally failed to determine the existence of a debatable reason. The closest the Complaint comes is a conclusory allegation in Paragraph 50 that "Defendant's third-party administrator and consultants were not capable or equipped to handle Plaintiff's property damage claim"—a bare conclusion unsupported by any allegation about the engineer's qualifications, methodology, or any specific deficiency in the investigation. Under *Iqbal*, that conclusion is disregarded.

Count II thus fails to plausibly plead the third element (nonexistence of any debatable reason), or either of the alternatives available under the fourth element (knowledge of absence or intentional failure to investigate). Even if timely, Count II fails to state a claim and must be dismissed for that independent reason.

### V.   COUNT III IS BARRED BY THE SAME TWO-YEAR PERIOD BECAUSE IT ALSO PLEADS THE TORT OF BAD FAITH; IS NON-COGNIZABLE AS A FREESTANDING CAUSE OF ACTION IN THE INSURANCE CONTEXT; AND FAILS TO PLAUSIBLY PLEAD BAD FAITH

#### A.   COUNT III IS A DISGUISED BAD FAITH TORT CLAIM SUBJECT TO THE TWO-YEAR LIMITATIONS PERIOD

The label "breach of duty of good faith and fair dealing" does not insulate Count III from *Clark*. What controls is the source of the duty Plaintiff seeks to vindicate—and

that source determines the limitations period. *Clark* held that "[b]ecause the duties underlying Counts II and IV are imposed by law rather than derived from the insurance contract, the two-year statute of limitations applies." *Clark*, 2025 V.I. at ¶26. The Supreme Court grounded that holding in the structural distinction between contract-based duties (six years) and statutory duties imposed under 22 V.I.C. § 2 (two years). *Id.* The label affixed to a claim does not control; the source of the duty does.

Count III, as pleaded, alleges breach of the very duty *Clark* addressed. Paragraph 53 alleges that RoyalStar's actions "were outrageous and done with evil motive and/or reckless indifference to Plaintiff's rights as a policyholder." Paragraph 48 alleges "fraudulent, deceitful, and other conduct inconsistent with [RoyalStar's] contractual and statutory obligations." Compl. ¶¶48, 53. Those are the elements of the tort of bad faith: intentional refusal to pay, no debatable reason, knowledge or reckless indifference. *Justin v. Guardian Ins. Co.*, 670 F. Supp. 614, 617 (D.V.I. 1987). Count III alleges insurer bad faith and demands punitive damages for it. It is the tort of bad faith under another name.

The duty Count III seeks to vindicate—honest, fair conduct by an insurer toward its insured—is the duty 22 V.I.C. § 2 imposes. The Legislature has declared that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." 22 V.I.C. § 2. That is the same duty *Clark* held is governed by the two-year period because it is "not contractual in nature." *Clark*, 2025 V.I. 15 at

¶26. Whether labeled "bad faith" or "breach of duty of good faith and fair dealing," a claim against an insurer for breach of that duty is governed by the two-year period.

Non-insurance decisions applying a six-year period to implied-covenant-of-good-faith claims are inapplicable because they impose an implied duty of good faith in the absence of a statutory requirement. *Merchants Commercial Bank* involved a bank-borrower dispute. 64 V.I. at 3. In *Pegasus Holding Group Stables, LLC v. Share*, No. ST-2014-CV-69, 2020 WL 8020083 (V.I. Super. Aug. 21, 2020), the parties disagreed whether the contract reflected a loan or a purchase agreement—but it definitely did not involve an insurance policy. This Court's recent decision in *Williams v. Cost-U-Less, Inc.*, No. 1:11-CV-0025, 2026 WL 809460 (D.V.I. Mar. 24, 2026), involved an employment relationship. None of those courts confronted the question whether 22 V.I.C. § 2—which applies only to insurance—supplies the duty in this context. None of them had any occasion to consider how *Clark's* source-of-duty analysis applies when the duty alleged is one Section 2 imposes. They establish only that the contract-based implied covenant, where it exists, sounds in contract. They do not establish that the contract-based implied covenant exists in the insurance context, or that it governs when a plaintiff pleads breach of the statutory duty Section 2 imposes.

Indeed, *Williams* itself drew exactly the line RoyalStar draws here. Footnote 13 of *Williams* noted that post-*Merchants Commercial Bank* insurance cases have "rebranded" claims for breach of the duty of good faith and fair dealing in the insurance context as the "tort of bad faith of insurance companies"—governed by the two-year

period. 2026 WL 809460, at \*16 n.13. That is the correct characterization of Count III here. Whether viewed as a label or as a substantive cause of action, Plaintiff's Count III seeks to vindicate the statutory duty Section 2 imposes on RoyalStar, and *Clark* governs.

Count III is thus time-barred for the same reasons as Count II.

**B.    ALTERNATIVELY, COUNT III IS NOT COGNIZABLE IN THE INSURANCE CONTEXT BECAUSE 22 V.I.C. § 2 IMPOSES AN *ACTUAL* DUTY OF GOOD FAITH THAT ELIMINATES THE NEED FOR A COMMON-LAW *IMPLIED* DUTY**

If the Court declines to dismiss Count III on limitations grounds, it should dismiss the count because no independent cause of action for breach of the implied covenant of good faith and fair dealing is available against an insurer in the Virgin Islands. The Legislature, by enacting 22 V.I.C. § 2, has supplied the duty of good faith owed by an insurer to its insured, making it unnecessary for the common law to imply such a duty. There is no contract-based implied-covenant claim left for Plaintiff to assert separately.

The Virgin Islands implied covenant of good faith and fair dealing is a narrow doctrine. It "is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise." *Merchants Commercial Bank*, 64 V.I. at 34. It protects only "the right of the other to receive the benefits of the agreement"—the parties' bargained-for expectations under the contract they wrote. *Id.* at 34-35. It is a gap-filler tied to the bargain, available only when the parties have not addressed the *conduct* in question.

Section 2 imposes something fundamentally different. It is not a gap-filler tied to the parties' bargain. It is a freestanding duty of good faith, honesty, and equity in "all

insurance matters," imposed by the Legislature because the business of insurance is "affected by the public interest." 22 V.I.C. § 2. The duty applies regardless of what the parties wrote. It applies even to matters the policy is silent on. It applies because of the relationship, not because of the contract. *Clark* recognized this distinction expressly when it held that "the fiduciary duties at issue here are not contractual in nature. Rather, they are independently imposed by statute." *Clark*, 2025 V.I. 15 at ¶26. *Justin* recognized the same distinction nearly four decades ago when it held that the insurer's duty of good faith "does not arise out of the contract, but it is an obligation imposed by law." *Justin*, 670 F. Supp. at 616.

Virgin Islands courts have refused to allow an implied covenant of good faith and fair dealing claim in other contexts where a statute has supplied the duty. Thus, in the employment context, the common-law implied covenant of good faith and fair dealing is unavailable to employees protected by the Wrongful Discharge Act (24 V.I.C. § 76, *et seq*). *Williams*, 2026 WL 809460, at *17. The same logic applies with equal force here. Section 2 declares that the business of insurance "is one affected by the public interest" and statutorily imposes a duty of good faith on every insurer doing business in the Territory. There is no need for the courts to imply a duty when the Legislature has established the duty.

The result is a clean structure that reconciles all of the relevant authority. Outside the insurance context, the implied covenant exists, sounds in contract, and is governed by the six-year period. *See Merchants Commercial Bank*, 64 V.I. at 16; *Pegasus*, 2020 WL 8020083, at *5; *Williams*, 2026 WL 809460, at *16. Inside the insurance context,

the duty of good faith, at least with respect to bad faith and fiduciary duty claims, is supplied by 22 V.I.C. § 2; the cause of action to enforce it is the tort of bad faith; and the limitations period is two years under *Clark*, 2025 V.I. 15 at ¶26. A plaintiff cannot avoid that limitations period by relabeling a bad faith claim as a "breach of implied covenant" claim. Otherwise, *Clark* would be a dead letter—every stale bad faith claim could be revived by changing the heading in a count of a complaint.

Plaintiff's implied-covenant claim fails because there is no duty to imply—the source of the duty is 22 V.I.C. § 2, not the contract, and the two-year limitations period applies.

### C. EVEN IF COUNT III IS TIMELY AND COGNIZABLE, IT FAILS TO PLAUSIBLY PLEAD THE ELEMENTS OF THE TORT OF BAD FAITH

Count III is also deficient because it fails to plausibly state a claim. The conclusory allegations in Count III duplicate those in Count II. The same Exhibit B that defeats Count II (by identifying the engineer's report, the deductible analysis, the late-notice defense) defeats Count III.

Thus, there are three independent reasons to dismiss Count III: statute of limitations; it is non-cognizable; and it fails to state a claim and must be dismissed.

### VI. THE PRAYER FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

The Complaint's prayer for relief seeks "punitive damages, where applicable, in an amount sufficient to punish Defendant for its outrageous, intentional and unlawful conduct." Compl. Prayer (d)(4). The prayer fails for two independent reasons. First, the Complaint does not plausibly allege conduct that would support an award of punitive

damages under Virgin Islands law. Second, even if it did, punitive damages are not recoverable for breach of contract — and once Counts II and III are dismissed for the reasons set forth above, only the breach of contract claim remains.

### A. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE CONDUCT THAT WOULD SUPPORT AN AWARD OF PUNITIVE DAMAGES.

The Complaint's prayer for relief seeks punitive damages for what it labels "outrageous, intentional and unlawful conduct." Compl. Prayer (d)(4). That prayer fails the *Iqbal/Twombly* pleading standard independently of the dismissal grounds set forth in Sections III through V above, and the punitive damage claim should be dismissed on that ground alone.

"Punitive damages are damages awarded in cases of serious or malicious wrongdoing to punish or deter the wrongdoer or deter others from behaving similarly." *Atl. Hum. Res. Advisors, LLC v. Espersen*, 76 V.I. 583, 628, 2022 VI 11, ¶66 (2022) (citation and internal quotation marks omitted). "Punitive damages must be based upon conduct that is not just negligent but shows, at a minimum, reckless indifference to the person injured—conduct that is outrageous and warrants special deterrence." *Id.* (collecting cases). To survive a Rule 12(b)(6) attack on the prayer for punitive damages, the Complaint must allege facts that, taken as true, would support an award of punitive damages.

Plaintiff's allegations regarding punitive damages merely recite the legal standard: that RoyalStar's conduct was "outrageous, intentional and unlawful," Compl. Prayer (d)(4); and that "Defendant's actions were outrageous and done with evil motive and/or

reckless indifference." Compl. ¶¶45, 53. Those allegations track the *Espersen* standard but identify no specific act, no factual context, and no circumstance from which the Court could infer that RoyalStar acted with the heightened mental state punitive damages require. They are precisely the "naked assertion[s] devoid of further factual enhancement" that *Iqbal* excludes from the plausibility analysis. *Iqbal*, 556 U.S. at 678 (cleaned up).

What remains, once the conclusory allegations are set aside, is the same factual scenario discussed in Section IV: Plaintiff filed a claim. RoyalStar retained a licensed professional engineer who tied the observed damage to pre-existing deterioration rather than to a windstorm. Compl. ¶15; Compl. Ex. B at 5-6. RoyalStar identified two additional bases for denial—both grounded in the policy terms and conditions. Compl. Ex. B at 6. RoyalStar communicated all three bases to Plaintiff in a written denial letter dated November 9, 2023. Compl. ¶14; Compl. Ex. B. There is nothing in the complaint that plausibly alleges "serious or malicious wrongdoing"; "reckless indifference to the person injured"; or conduct that "is outrageous and warrants special deterrence." *Espersen*, 76 V.I. at 628, ¶66. It establishes, at most, a contested coverage dispute supported by an engineer's report, a deductible calculation, and a notice defense—none of which are the stuff of punitive damages.

This pleading deficit is independent of the dismissal grounds asserted above. Plaintiff still needed to plead facts plausibly supporting the elements required for an award of punitive damages. The Complaint does not, and on these facts could not, do so. Subparagraph (d)(4) of the Complaint's prayer for relief should be dismissed.

### B.    PUNITIVE DAMAGES ARE NOT RECOVERABLE FOR BREACH OF CONTRACT

Alternatively, the punitive damage demand also cannot survive once the tort claims are dismissed as time-barred, as the only claim that remains is the breach of contract alleged in Count I, and punitive damages are not recoverable for breach of contract under Virgin Islands law. The Court should accordingly dismiss the punitive damages demand to the extent it rests on the contract.

The Virgin Islands Supreme Court has never directly addressed whether punitive damages may be recovered for breach of contract. Consequently, this Court must predict the answer to that question by assessing (1) whether Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands. *Gov't of the Virgin Islands v. Connor*, 60 V.I. 597, 600–01 (2014).[4] All three factors confirm that punitive damages are not recoverable for breach of contract.

### 1.    PAST DECISIONS OF VIRGIN ISLANDS COURTS

The first *Banks* factor asks whether Virgin Islands courts have previously adopted the rule. They have. This Court, applying Virgin Islands law, has twice held that punitive damages cannot be recovered for breach of contract. In *Tradewinds, Inc. v. Citibank, N.A.*, this Court stated plainly that "punitive damages are not recoverable for a breach of contract action." No. CIV. 80-7, 1983 WL 890022, at *2 (D.V.I. Jan. 11,

---

[4] This is commonly known as conducting a "*Banks* analysis," named for the case that spawned it, *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (2011)

1983). And in *Jo-Ann's Launder Center, Inc. v. Chase Manhattan Bank, N.A.*, this Court dismissed the plaintiff's punitive damages claim after dismissing the tort claims, precisely because punitive damages are not available for a breach of contract. 854 F. Supp. 387, 392 (D.V.I. 1994). There do not appear to be any other cases in the Virgin Islands addressing the issue.

### 2. ALMOST EVERY AMERICAN JURISDICTION BARS PUNITIVE DAMAGES FOR BREACH OF CONTRACT

The second *Banks* factor surveys the majority and minority rules in the United States. A survey of every American jurisdiction, attached as Exhibit A, establishes that the overwhelming majority of the 53 jurisdictions surveyed do not permit punitive damages for a breach of contract that is not independently tortious. Nebraska bars punitive damages in all civil actions, contract or tort alike; Wyoming's rule is unsettled; and two jurisdictions yielded no determinable general rule. Only three jurisdictions follow a minority rule. Every other jurisdiction follows the majority rule. The majority rule aligns with the past Virgin Islands jurisprudence and holds that punitive damages are recoverable in connection with a contractual breach only where the breaching conduct independently constitutes a tort for which punitive damages would lie—fraud, conversion, breach of fiduciary duty, and the like. A breach that is merely deliberate, willful, or even malicious, but that does not independently satisfy the elements of a recognized tort, will not support a punitive award. The survey is summarized below and set out in full, with the controlling authority for each jurisdiction, in Exhibit A.

| POSITION ON PUNITIVE DAMAGES FOR BREACH OF CONTRACT | JURISDICTIONS | COUNT |
|---|---|---|
| Majority rule—not recoverable absent an independent tort | 45 states + D.C. | 46 |
| Stricter than the majority—punitive damages barred in all civil actions, contract or tort | Nebraska | 1 |
| Minority rule—egregious, malicious, or wanton breach may suffice without a separate independent tort | Idaho, New Mexico, Vermont | 3 |
| Unsettled | Wyoming | 1 |
| No determinable general rule | Puerto Rico, Guam | 3 |
| Total jurisdictions surveyed | 50 states + D.C., Guam, Puerto Rico | 53 |

One features of the survey deserves emphasis. Even the three minority jurisdictions do not permit punitive damages for an ordinary breach. Each requires conduct that is malicious, oppressive, fraudulent, or wanton, and each expressly excludes the routine breach from punitive exposure. *See* Ex. A (Idaho, New Mexico, Vermont). The practical distance between the majority and minority rules is therefore narrow, and the direction of authority is overwhelming.

### 3. THE MAJORITY RULE IS THE SOUNDEST RULE FOR THE VIRGIN ISLANDS

The third and "most important" Banks factor asks which rule is soundest for the Virgin Islands. *Connor*, 60 V.I. at 600–01. Several considerations, each independently sufficient and together decisive, establish that the majority rule is the better rule for this Territory.

19

First, the remedial aim of contract law is compensation—to place the non-breaching party in the position it would have occupied had the contract been performed. Punishment and public deterrence are the office of tort and criminal law, not contract. A rule that imports punitive damages into contract claims collapses the distinction between contract and tort and imports into every commercial relationship the open-ended, punishment-driven exposure that contract law has historically and deliberately excluded.

Second, parties contract against the backdrop of known consequences. They price risk, allocate liability, and decide whether to enter an agreement at all on the assumption that their exposure for breach is measured by the counterparty's expectation interest. The availability of punitive damages would introduce the prospect of indeterminate and potentially ruinous liability in every contract dispute. That uncertainty is corrosive to legitimate economic activity. The Virgin Islands has an interest in being regarded as a stable and predictable forum for commerce. Adopting the majority rule serves that interest; departing from it would make the Territory an outlier jurisdiction in which ordinary contract disputes carry extraordinary risk.

Third, there is societal value in the "efficient breach" of contracts that have failed their economic purpose. *Grynberg v. Citation Oil & Gas Corp.*, 573 N.W.2d 493, 500 ((S.D.1997) (observing that "our free market system allows economically efficient breaches of contract, for example, when it costs less for one party to breach an unwise contract and to pay the other party compensatory damages than it would cost to completely perform the contract"); *Northern Indiana Public Service Co. v. Carbon*

*County Coal Co.*, 799 F.2d 265, 279 (7th Cir.1986) (Posner, J.) (finding specific performance was unjustified where an efficient breach brought a halt to "a production process that was no longer cost-justified"). The allowance of punitive damages would eviscerate the efficient breach doctrine.

Fourth, the majority rule does not immunize genuinely tortious conduct. Where a breach is accompanied by conduct that *independently* satisfies the elements of a recognized tort, punitive damages remain available—for the tort. A plaintiff with a real claim of egregious, independently tortious conduct thus loses nothing under the majority rule; only a plaintiff seeking to punish an ordinary breach is turned away, and properly so.

Fifth, a rule allowing punitive damages for breach would arm every contract plaintiff with the *in terrore*m leverage of open-ended punitive exposure, inflating claims, distorting settlement dynamics, and burdening the courts. The majority rule avoids these distortions by confining punitive damages to the tort claims for which they were designed.

Sixth, adopting the rule followed by forty-six of the fifty jurisdictions that have resolved the question harmonizes Virgin Islands law with the overwhelming weight of American authority. That harmony is itself a virtue: it promotes predictability for the many parties who contract across jurisdictional lines and who do business in the Territory, and it spares Virgin Islands law the anomaly of standing nearly alone.

Finally, adopting the majority rule asks this Court to preserve, not disturb, settled expectations. The Virgin Islands decisions already on the books—*Tradewinds* and

*Jo-Ann's Launder*—apply the majority rule. A *Banks* analysis confirms that those decisions reached the right result for the right reasons. This Court should hold that punitive damages are not recoverable for breach of contract under Virgin Islands law, and dismiss the Complaint's punitive damages demand to the extent it rests on the contract claim.

## VII.    CONCLUSION

Plaintiff's own Complaint establishes that Count II is barred by the two-year statute of limitations the Virgin Islands Supreme Court has held governs the tort of insurer bad faith. Count III pleads the same bad faith tort under a different label and is therefore also barred by the same two-year period; alternatively, Count III is not cognizable as an independent cause of action in the insurance context because 22 V.I.C. § 2 supplies the duty of good faith and thus supplants the implied duty of good faith and fair dealing applicable to non-insurance contracts. Further, when measured against Plaintiff's own allegations, neither Count II nor Count III plausibly pleads a claim for bad faith. And finally, the claim for punitive damages should be dismissed for failure to plausibly plead it and because once Counts II and III are dismissed, the breach of contract count cannot support a claim for punitive damages. For the foregoing reasons, RoyalStar respectfully requests that this Court dismiss Counts II and III with prejudice.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for RoyalStar Assurance Ltd.

Dated: June 11, 2026

22

<u>   /s/ Andrew C. Simpson   </u>
VI Bar No. 451
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

## WORD COUNT CERTIFICATION

I certify that this memorandum, excluding only the caption and the signature block, consists of fewer than 5,600 words and therefore complies with LRCi 7.1(b).

<u>   /s/ Andrew C. Simpson   </u>