**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| UNITED PROPERTY, INC., | ) | |
| Plaintiff, | ) | CASE NO. 3:26-CV-19 |
| vs. | ) | |
| ROYALSTAR ASSURANCE, LTD, | ) | |
| Defendant. | ) | |

**REPORT ON PARTIES' RULE 26(f) CONFERENCE**
**AND JOINT PROPOSED SCHEDULING PLAN**

Plaintiff, United Property, Inc. ("Plaintiff" or "United Property"), and Defendant, RoyalStar Assurance, Ltd ("Defendant" or "RoyalStar") (collectively, the "Parties"), by and through their undersigned counsel, submit the following Report on the Parties' Rule 26(f) Conference and Proposed Scheduling Plan.

1. **Participants** Pursuant to Fed. R. Civ. P. 26(f), counsel for the Plaintiff and counsel for Defendant participated in a Rule 26(f) conference via Microsoft TEAMS on July 29, 2026.

2. **Initial Disclosures** The parties have exchanged initial disclosures.

3. **Statement of the Facts Underlying the Claims and Defenses**

***Plaintiff***:

This action arises from Defendant RoyalStar Assurance, Ltd.'s breach of Commercial Property Insurance Policy No. C/44/FI/22/0177 (the "Policy"), which insured Plaintiff United Property, Inc.'s property located at 25 Dronningens Gade/Main Street, St. Thomas, Virgin Islands

(the "Property"). The Policy was in full force and effect on September 17, 2022, when the Property sustained a collapse, abrupt collapse, and ensuing damage, with Hurricane Fiona being a contributing cause. Accordingly, Plaintiff's claim is for covered collapse, abrupt collapse, and ensuing loss under the Policy, arising from conditions associated with Hurricane Fiona that contributed to the collapse and resulting damage.

The Policy provided $414,375.00 in Building coverage and $150,000.00 in coverage for Contents, Fixtures, and Jewelry Casings, subject to a $2,500.00 deductible per loss, including a covered collapse loss.

Plaintiff timely reported the loss. Defendant retained Sedgwick Claims Management Services, Inc. to investigate and adjust the claim. Notwithstanding the physical evidence of collapse and resulting damage, Defendant denied coverage and has refused to pay the benefits due under the Policy. Plaintiff contends that Defendant failed to properly investigate, evaluate, and adjust the collapse loss despite substantial evidence demonstrating covered physical damage to the Property.

Plaintiff retained Francisco Nadal, P.E., to investigate the cause and extent of the loss. Mr. Nadal inspected the Property, including the roof and interior, and concluded that Hurricane Fiona's winds ripped and displaced portions of the roof membrane, permitting substantial rainwater intrusion into the building. His investigation further documented collapsed portions of the ceiling and lighting systems, damage to furniture and showcases, and substantial impairment of the roof system and building interior. The investigation further established that the Property sustained a collapse of the roof system, resulting in significant water intrusion and consequent damage to the interior of the building. This evidence supports Plaintiff's position that Fiona contributed to the conditions that caused or precipitated the covered collapse and the ensuing damage that followed.

The nature and extent of the collapse damage are further confirmed by the July 2026 Damage Assessment prepared by Roy Young of Anchor Claims LLC. Mr. Young inspected the Property, including the roof and interior, and observed that the roof had collapsed into the building and that the resulting structural condition restricted safe access to portions of the premises. His inspection documented collapsed roof framing, debris throughout the sales floor, damaged display areas, and exposed electrical components. Mr. Young's Damage Assessment values the Building loss at $537,750.49 replacement cost value ("RCV") and $399,342.10 actual cash value ("ACV"), and the Contents loss at $156,586.00 RCV and $132,964.85 ACV.

Plaintiff therefore contends that Defendant accepted premiums in exchange for coverage against covered physical loss or damage, including collapse, abrupt collapse, and ensuing loss, yet breached the Policy by failing to properly investigate and adjust Plaintiff's claim and by refusing to pay the benefits owed. Specifically, Plaintiff alleges that the insured Property sustained a covered collapse and abrupt collapse, as well as resulting ensuing damage, and that Hurricane Fiona was a contributing cause of the conditions that precipitated and ultimately resulted in the collapse.

Plaintiff submitted a claim for benefits under the Policy and contends that Defendant has failed and/or refused to pay the full amount of benefits owed. Plaintiff claims Building damages of $399,342.10 ACV, less the applicable $2,500.00 deductible, and Contents damages of $132,964.85 ACV, together with applicable interest, attorneys' fees, costs, and any other compensatory or consequential damages recoverable under applicable law. Defendant disputes the nature, cause, scope, and/or amount of covered damage and the extent of its obligations under the Policy, as set forth in its Answer and affirmative defenses.

***Defendant**:*

On September 18, 2022, Tropical Storm Fiona made landfall on St. Thomas with maximum sustained winds of 34 mph and peak gusts of 52 mph causing minimal damage, and even minimal power interruption, across the island. Plaintiff did not submit an insurance claim or notify its insurer (RoyalStar) of any damage it claimed was related to Fiona until January 6, 2023. On February 7, 2023, Plaintiff had Francisco Nadal, a licensed professional engineer, examine the property. Nadal issued a report on February 17, 2023, that overstated the sustained winds and peak winds as reaching 40-60 mph sustained and 70 mph gusts and claimed that a membrane roof coating was dislodged by the wind. The roof is well-protected from exposure to winds by surrounding buildings.

RoyalStar retained licensed insurance adjuster Sedgwick to investigate and adjust the claim which, in turn, retained Paul Ferreras, a licensed professional engineer, to assist with its investigation. On October 5, 2023, Ferreras opined that the roof was in poor condition and in need of replacement *before* Fiona; that this poor condition would likely have allowed the wind conditions to lift the membrane during the storm, and that "[g]ood, maintained roofing material would not have been lifted from the roof structure in these low wind speeds." He also concluded that the roof-mounted air conditioning equipment was "old and in poor condition" and that "if the equipment was in good condition, then the low wind speeds should not have caused any damage to the equipment." Ferreras also concluded that the interior damage was due to water-ingress through the poorly maintained roof and not due to the windstorm.

RoyalStar declined coverage on November 9, 2023. based upon the fact that the loss was due to the poor condition of the building rather than due to the relatively minor winds from Fiona

and the limited damage that could possibly be attributed to a covered peril fell within the policy's deductible. RoyalStar did not breach the insurance contract.

4. **Motions for dates of Joinder of Parties or to Amend Pleadings**

(a) The parties agree that any additional parties shall be joined on or before **November 30, 2026**; and

(b) All motions for leave to amend pleadings shall be filed on or before **November 30, 2026.**

5. **Discovery Plan.** The parties propose the following discovery plan:

***(a)*** *Discovery may be needed on the following subjects, which are non-exclusive and are not necessarily representative of all potentially relevant issues in this case:*

.

i. Defendant's pre-policy investigation and underwriting of Plaintiff's property, including the information relied upon in issuing coverage and later disputing coverage for the building.
ii. Defendant's records concerning the condition of the insured property, including inspections, underwriting materials, photographs, reports, valuations, surveys, applications, and renewals prior to Plaintiff's claim
iii. The condition of the building prior to Fiona;
iv. The condition of the building immediately after Fiona;
v. The condition of the building before and after Hurricanes Irma and Maria;
vi. The reason for the delay in reporting the loss;
vii. The steps taken prior to Fiona to prepare for the arrival of Fiona;
viii. Defendant's investigation, adjustment, evaluation, handling, and disposition of Plaintiff's claim, including inspections, estimates, reports, communications, claim notes, coverage determinations, and the basis for denial.
ix. The extent and nature of damage caused by Fiona
x. The scope and cost of repairs required to restore the insured property to its pre-loss condition, including labor, materials, code-required work, demolition, debris removal, professional fees, overhead and profit, and other reasonably necessary repair or replacement costs.
xi. Communications among Defendant and its representatives concerning Plaintiff's claim, including the cause, scope, condition, or valuation of the claimed damage.

xii. The applicability and interpretation of the insurance policy provisions Defendant contends affect coverage for Plaintiff's claim, including any terms, conditions, exclusions, limitations, endorsements, and duties after loss.

xiii. Defendant's claim-handling guidelines, procedures, and practices applicable to collapse property claims, to the extent relevant and discoverable.

**(b)** *Discovery Phases and Discovery Period.* Plaintiffs and Defendant propose that discovery should be conducted in phases.

i. The parties propose that written fact discovery shall be completed by **November 30, 2026**.

ii. The Plaintiff expects to take approximately six (6) fact depositions but will not be able to determine the number of depositions required until written discovery is complete. The Defendant Expects to depose the four individuals identified by Plaintiff in its initial disclosures as supporting its claim. Defendant expects that discovery will identify other individuals (and thus potential deponents) with knowledge of the condition of the building such as repair contractors; potential tenants and people that have knowledge of the condition of the property before and after Hurricanes Irma and Maria in 2017. Defendant anticipates that it may ultimately need the full 10 depositions authorized by the Rules. Counsel for both parties will cooperate in the scheduling of depositions.

iii. The parties agree that the presumptive limits of ten (10) depositions per side as set forth in Rule 30(a)(2)(A), Fed.R.Civ.P., and twenty-five (25) interrogatories per party as set forth in Rule 33(a), Fed.R.Civ.P., should apply in this case.

iv. The parties propose that fact depositions be completed by **March 31, 2027**.

***(c)*** *Expert Disclosures and Depositions.*

i. Plaintiff retained a professional engineer and provided Defendant a copy of the engineer's report in his Rule 26 disclosures on **July 29, 2026**. If such engineer is to be treated as an expert in this action, a complete expert disclosure will be made by the deadline for Plaintiff's expert disclosures. Plaintiff anticipates retaining a weather expert and possibly a damages expert to support its claim.

ii. Defendant anticipates the need for experts to rebut any opinion offered by Plaintiff's experts and definitely anticipates designating Paul Ferreras as a professional engineering expert; and, out of an abundance of caution will likely name George Merritt of Sedgwick as an expert with respect to the adjustment of the claim. Depending upon what develops in discovery, there may be a need for an insurance expert and a construction expert, particularly as to the replacement value of the building for purposes of calculating co-insurance.

iii. Plaintiff shall disclose its expert witnesses and produce expert reports no later than **May 30, 2027**.

iv. Defendant shall disclose its expert witnesses and produce expert reports no later than **July 30, 2027.**

v. Expert depositions shall be completed by **September 30, 2027**.

vi. This is a property damage case and therefore there should be no need for physical or mental examinations of any party.

6. **Inadvertent Disclosure of Privileged Information:** The parties have agreed that the inadvertent or unintentional disclosure of information protected by the attorney-client, work product, or other applicable privileges or protections (a "privilege") shall be governed by the applicable provisions of Fed. R. Civ. P. 26 and Fed. R. Evid. 502, and that such inadvertent production and subsequent clawback shall not constitute a waiver of such privileges. A party shall assert inadvertent disclosure of a document promptly upon learning of the inadvertent disclosure.

7. **<u>Settlement and Mediation</u>**

*(a) Settlement. Counsel for the parties have discussed the possibility of an early settlement of the case. Plaintiff seeks contractual damages under the policy, together with applicable interest, attorneys' fees, costs, and any other compensatory or consequential damages recoverable under applicable law. However, RoyalStar Assurance feels that there is no basis for coverage and has communicated a strong disinclination to settle.*

(b) *Mediation:* The parties agree that mediation should be initiated no later than **April 30, 2027**

(c) *Production of Documents and Electronically Stored Information (ESI).* The parties agree that they will produce documents responsive to discovery requests in PDF format. The parties do not anticipate a need for production of documents in native formats, but that a party may individually designate documents that have been produced in PDF format for production in native or in the format in which the documents or ESI are ordinarily maintained.

8. **Dispositive Motions:** Dispositive and Daubert motions shall be filed by **November 15, 2027.**

9. **Trial**

(a) Plaintiff has demanded a trial by jury. The parties agree that trial of this matter will require approximately 3-4 trial days, excluding jury selection and subject to the number of witnesses and the scope of expert testimony ultimately presented.

(b) The earliest date by which the case can reasonably be expected to be ready for trial is **January 10, 2028**.

Respectfully submitted on this 18th day of August, 2026.

**MERLIN LAW GROUP**

Dated: August 19, 2026

Respectfully submitted,

*/s/ Javier Delgado*__________

**JAVIER DELGADO, ESQ.**
VI Bar No.: R2065
MERLIN LAW GROUP, PLLC
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692
jdelgado@merlinlawgroup.com
jdteam@merlinlawgroup.com

**Andrew C. Simpson, P.C.**
Attorneys for RoyalStar Assurance

August 19, 2026

/s/ Andrew C. Simpson

ANDREW C. SIMPSON
VI Bar No. 451
2191 Church St., Ste. 5
Christiansted, St. Croix, VI 00820
(340) 719-3900
asimpson@coralbrief.com