**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED PROPERTY, INC.,**<br>**PLAINTIFF,**<br>**VS.**<br>**ROYALSTAR ASSURANCE LTD.,**<br>**DEFENDANT.** | **CASE NO. 3:26-CV-19** |

**ROYALSTAR ASSURANCE'S DISCOVERY MEMORANDUM**

Now comes RoyalStar Assurance Ltd. ("RoyalStar") and submits the following discovery memorandum.

## 1. FACTS

Plaintiff was insured under a commercial property insurance policy with coverage limits of $414,375 for buildings and $150,000 in contents coverage. There was no coverage for business interruption. The policy was subject to a windstorm deductible of 5% of the sum insured

On September 18, 2022, Tropical Storm Fiona made landfall on St. Thomas with maximum sustained winds of 34 mph and peak gusts of 52 mph, causing minimal damage, and even minimal power interruption, across St. Thomas. Plaintiff did not submit an insurance claim or notify its insurer (RoyalStar) of any damage it claimed was related to Fiona until January 6, 2023—more than 3-1/2 months later.

On February 7, 2023, Plaintiff had Francisco Nadal, a licensed professional engineer, examine the property. Nadal issued a report on February 17, 2023 that overstated the sustained winds and peak winds as reaching 40–60 mph sustained and 70 mph gusts and claimed that a membrane roof coating was dislodged by the wind. The roof is well-protected from exposure to winds by surrounding buildings.

RoyalStar retained licensed insurance adjuster Sedgwick to investigate and adjust the claim which, in turn, retained Paul Ferreras, a licensed professional engineer, to assist with its investigation. On October 5, 2023, Ferreras opined that the roof was in poor condition and in need of replacement before Fiona; that this poor condition would likely have allowed the wind conditions to lift the membrane during the storm, and that "[g]ood, maintained roofing material would not have been lifted from the roof structure in these low wind speeds." He also concluded that the roof-mounted air conditioning equipment was "old and in poor condition" and that "if the equipment was in good condition, then the low wind speeds should not have caused any damage to the equipment." Ferreras also concluded that the interior damage was due to water-ingress through the poorly maintained roof and not due to the windstorm.

RoyalStar declined coverage on November 9, 2023. based upon the fact that the loss was due to the poor condition of the building rather than due to the relatively minor winds from Fiona and the limited damage that could possibly be attributed to a covered peril fell within the policy's deductible. RoyalStar did not breach the insurance contract.

## 2. THE SECOND AMENDED COMPLAINT CHANGES THE NATURE AND SCOPE OF THE CASE

This action was commenced, and pleaded through two prior complaints, as a windstorm claim. Plaintiff's ACORD property loss notice of January 6, 2023 identified the kind of loss as "wind," and the engineering report Plaintiff submitted in support of the claim attributed the damage to wind displacement of the roof membrane and consequent rainfall intrusion. RoyalStar's investigation and its November 9, 2023 declination addressed that claim.

On August 18, 2026, Plaintiff filed a second amended complaint ("SCA") alleging that the building suffered a "collapse" that was caused, in part, by the rain from Fiona. While Plaintiff was not given leave to file the SCA, RoyalStar does not object to it and hopes to file an answer to it before the Initial Scheduling Conference.

The SCA recasts the case. Plaintiff now pleads a "collapse, abrupt collapse, and ensuing damage," with Fiona alleged only as "a contributing cause" of the conditions that precipitated the collapse. SCA ¶¶ 10–11, 24. The operative coverage provision is no longer the Windstorm peril but a coverage for "collapse" found under "Additional Coverage – Collapse" of the "Causes of Loss – Broad Form" (CP 10 20 10 12). Thus, the SCA substitutes a different coverage grant with different elements, and in doing so alters the factual issues, the relevant time frame, and the amount in controversy.

**ELEMENTS:** The windstorm claim turned on the wind speed at the insured premises and on whether wind damaged the roof or walls such that rain entered through that damage. The collapse claim turns on whether there was an abrupt falling

down or caving in; whether it rendered the building or a part of the building incapable of being occupied for its intended purpose; and whether it was caused by one of six enumerated causes — which include building decay hidden from view, but only where that decay was not known to an insured before the collapse.

**TIME FRAME:** The windstorm theory was anchored to a single date, September 17–18, 2022. The collapse theory is not. Because gradual decay is among the enumerated causes, the date on which any collapse occurred is now a contested issue on which Plaintiff bears the burden, and the condition, maintenance, and deterioration history of the roof over a period of years—including before the August 31, 2022 inception of the policy—is squarely in issue, as is what Plaintiff knew of that condition and when.

Nor is the timing of any collapse susceptible of proof by percipient testimony. When Plaintiff reported the loss on January 6, 2023, it explained the delay in reporting on the ground that its principals had not been on-island during the intervening period. Plaintiff's initial disclosures do not identify a witness who observed the condition of the roof framing between the alleged date of loss and Plaintiff's notice of loss. Establishing when any collapse occurred will likely depend upon forensic and expert proof, together with third-party records and testimony—a category of evidence the prior windstorm framing did not require.

**AMOUNT AND MEASURE OF LOSS:** The SCA seeks $399,342.10 in actual cash value for the building and $132,964.85 for contents, resting on a damage assessment prepared in July 2026, and pleads a $2,500 deductible in place of the policy's

windstorm deductible. SCA ¶¶ 12, 22, 25. Valuation, coinsurance, and the applicable deductible are now disputed issues that the prior pleadings did not present.

**CONSEQUENCE FOR DISCOVERY:** The amendment requires discovery that the windstorm framing did not: the timing and mechanism of any collapse; the pre-loss and post-loss condition, maintenance, and repair history of the roof and roof framing; Plaintiff's knowledge of that condition; the occupancy and use of the premises before and after the alleged loss; and expert discovery directed to structural causation and to dating the alleged collapse—including as to Plaintiff's July 2026 assessment, which post-dates the alleged loss by nearly four years and is the first document in the record to describe a collapsed roof.

**3. DISCOVERY CONDUCTED:**

The parties have exchanges their Rule 26 initial disclosures.

**4. DISCOVERY PROBLEMS: NONE TO DATE.**

**5. DISCOVERY NEEDS:**

RoyalStar will seek discovery related to the condition of the building before and after Hurricanes Irma and Maria, and before and after Tropical Storm Fiona; the reasons for the delay in reporting the loss and what was done to protect the building following Fiona; the preparations taken by plaintiff to prepare for hurricane season in general and Fiona in particular, all building maintenance records and any other information that might help document the true condition of the building prior to Fiona, such as appraisals, attempts to sell or rent the building, nd things of that nature.

RoyalStar expects to depose the four individuals identified by Plaintiff in its initial

disclosures as supporting its claim. It expects that discovery will identify other individuals with knowledge of the condition of the building such as repair contractors; potential tenants and people that have knowledge of the condition of the property before and after Hurricanes Irma and Maria in 2017 and likely will seek to depose at least some of these individuals. At this time, RoyalStar anticipates that it needs the full 10 depositions authorized by the Rules.

**6. TIME TO COMPLETE DISCOVERY:**

Per the Joint Proposed Scheduling Plan, the parties have agreed that fact depositions should be completed by March 31, 2027 and expert discovery completed by September 30, 2027.

**7. EXPERT WITNESS NEEDS:**

RoyalStar anticipates the need for experts to rebut any opinion offered by Plaintiff's experts and definitely anticipates designating Paul Ferreras as a professional engineering expert; and, out of an abundance of caution will likely name George Merritt of Sedgwick as an expert with respect to the adjustment of the claim. Depending upon what develops in discovery, there may be a need for an insurance expert and a construction expert, particularly as to the replacement value of the building for purposes of calculating co-insurance. The recent filing of the second amended complaint adds the possibility that an expert on microorganisms and their impact upon wood timbers as well as a lumber expert to opine on the age of the rotting timbers may be required.

**8. ISSUES REGARDING DISCOVERY, DISCLOSURE AND ESI:**

RoyalStar does not anticipate any issues related to the disclosure, discovery or preservation of electronically stored information. RoyalStar and Plaintiff have agreed that documents should be produced in Adobe PDF format with all parties reserving the right to request such files in native format if there is a need to discover metadata.

**9. ISSUES REGARDING CLAIMS OF PRIVILEGE:**

The parties have agreed upon a plan for dealing with the inadvertent disclosure of documents as set forth in their Rule 26(f) memorandum.

**10. LIMITATIONS ON DISCOVERY:**

RoyalStar does not anticipate a need for any limitations placed upon use of any discovery device at this time, other than those imposed in accordance with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure.

**11. MEDIATION AND SETTLEMENT:**

Until such time as the Court has adopted a process for mediation pursuant to 28 U.S.C. § 652 and made mediators available to the parties as set forth in 28 U.S.C. § 653(a), RoyalStar believes that the Court lacks the power to compel mediation. RoyalStar is not opposed to mediation but feels that until the Court is providing the mediators as set forth in chapter 44 of Title 28, U.S. Code, the decision to mediate must be left to the voluntary decision of the parties to engage in mediation at the time when the parties feel mediation would best serve their interests.

While the damages in this case are capped, RoyalStar perceives the Plaintiff's claim as presented in bad faith and is not inclined to settle.

**12. PROPOSED DEADLINES:**

The parties have jointly proposed deadlines as set forth in their Rule 26(f) memorandum.

**13. ESTIMATE OF TRIAL LENGTH:**

RoyalStar estimates that it will take 3-4 trial days to try the case, exclusive of jury selection.

**14. OTHER ISSUES:**

None.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for RoyalStar Assurance Ltd.

Dated: August 19, 2026

/s/ Andrew C. Simpson
By: Andrew C. Simpson, Esq.
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com