**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED PROPERTY, INC.,**<br>**PLAINTIFF,**<br>**VS.**<br>**ROYALSTAR ASSURANCE LTD.,**<br>**DEFENDANT.** | **CASE NO. 3:26-CV-19** |

**ANSWER OF ROYALSTAR ASSURANCE LTD.**

Now comes RoyalStar Assurance Ltd., and answers the Second Amended Complaint in this matter in correspondingly numbered paragraphs as follows:

1. Defendant lacks sufficient information regarding the factual allegations of this paragraph of the second amended complaint to allow a response and therefore the allegations are denied.

2. Defendant lacks sufficient information regarding the factual allegations of this paragraph of the second amended complaint to allow a response and therefore the allegations are denied.

3. Defendant admits the allegations of this paragraph of the second amended complaint.

4. Defendant admits the allegations of this paragraph of the second amended complaint.

5. Defendant admits the allegations of this paragraph of the second amended complaint.

6. Defendant admits the allegations of this paragraph of the second amended complaint.

7. Defendant admits the allegations of this paragraph of the second amended complaint.

8. Defendant denies the allegations of this paragraph of the second amended complaint.

9. Defendant admits the allegations of this paragraph of the second amended complaint.

10. Defendant denies the allegations of this paragraph of the second amended complaint.

11. Defendant denies the allegations of this paragraph of the second amended complaint.

12. Defendant denies the allegations of this paragraph of the second amended complaint as stated. Defendant admits that the building coverage was $414,375. Defendant avers that the $150,000 was for “”Fixtures/Jewellery casings.” [sic] Defendant further avers that the deductible varies depending upon the type of loss and that given that Plaintiff avers that Tropical Storm Fiona was a contributing cause of the loss, the deductible would be 5% of the total sum insured and in no event less than $2,500.

13. Defendant denies the allegations of this paragraph of the second amended

complaint.

14. Defendant admits the allegations of this paragraph of the second amended complaint.

15. Defendant denies the allegations of this paragraph of the second amended complaint as stated. Defendant admits that Sedgwick Claims Management Services, Inc. retained Professional Engineer Paul Ferreras to inspect the property but otherwise denies the allegations of this paragraph of the second amended complaint.

16. Defendant admits the allegations of this paragraph of the second amended complaint.

17. Defendant admits that Plaintiff *now contends* that Defendant failed to properly investigate, evaluate, and adjust the alleged collapse loss but avers that Plaintiff did not assert collapse as a cause of loss until August 18, 2026 and denies that its investigation, evaluation and adjustment of the claim was improper.

18. Defendant admits that Plaintiff retained Francisco Nadal but lacks sufficient information regarding the remaining factual allegations of this paragraph of the second amended complaint to allow a response and therefore the allegations are denied.

19. Defendant denies the allegations of this paragraph of the second amended complaint.

20. Defendant lacks sufficient information regarding the factual allegations of this paragraph of the second amended complaint to allow a response and therefore the

allegations are denied.

21. Defendant lacks sufficient information regarding the factual allegations of this paragraph of the second amended complaint to allow a response and therefore the allegations are denied.

22. Defendant lacks sufficient information regarding the factual allegations of this paragraph of the second amended complaint to allow a response and therefore the allegations are denied.

23. Defendant admits that Plaintiff *contends* the allegations contained in this paragraph of the second amended complaint but denies the facts contained underpinning such contention.

24. Defendant admits that Plaintiff *now alleges* that the Property sustained "a covered collapse and abrupt collapse" and alleges ensuing damage but denies the facts underpinning the allegations, including the incorrect characterization of Tropical Storm Fiona as a "hurricane."

25. Defendant admits that Plaintiff claims the damages described in this paragraph of the second amended complaint but denies that any such damages, even if proven, were covered by Defendant's insurance policy issued to Plaintiff.

26. Defendant admits that Plaintiff submitted a claim for "wind" damage to the Property and admits that Plaintiff *contends* that Defendant "has failed and/or refused to pay the full amount of benefits owed" but denies the facts underpinning such contention.

27. The allegations of this paragraph of the second amended complaint call for a legal

conclusion for which no response is required. Defendant avers that its duties under the Policy are established by the four corners of the insurance policy and by Title 22 of the Virgin Islands Code.

28. Defendant denies the allegations of this paragraph of the second amended complaint.

29. Defendant admits that it received the letter attached as Exhibit C to the second amended complaint and avers that the document speaks for itself. To the extent that Plaintiff's characterization of the letter departs from the document, Defendant denies the allegations of this paragraph of the second amended complaint.

30. Defendant denies the allegations of this paragraph of the second amended complaint.

31. Defendant denies the allegations of this paragraph of the second amended complaint.

32. Defendant denies the allegations of this paragraph of the second amended complaint.

33. Defendant incorporates its responses to the previous allegations of the second amended complaint as set forth above.

34. Defendant denies the allegations of this paragraph of the second amended complaint as stated. It admits that Plaintiff purchased an insurance policy from Defendant.

35. Defendant admits that the insurance policy is a contract with the Plaintiff.

36. Defendant denies the allegations of this paragraph of the second amended complaint as stated. Defendant admits that Plaintiff made the payments required under the Policy but denies for lack of sufficient information the claim that the damage occurred during the policy period.

37. Defendant denies the allegations of this paragraph of the second amended complaint.

38. Defendant denies the allegations of this paragraph of the second amended complaint.

39. Defendant denies the allegations of this paragraph of the second amended complaint.

40. Defendant denies the allegations of this paragraph of the second amended complaint.

41. Defendant denies the allegations of this paragraph of the second amended complaint.

42. Defendant denies the allegations of this paragraph of the second amended complaint.

## DEFENSES

RoyalStar asserts the following defenses to the Second Amended Complaint. The defenses set forth in Part One are negative defenses, asserted to give notice of matters on which Plaintiff bears the burden of proof; by pleading them RoyalStar does not assume, and expressly disclaims, any burden of proof or persuasion that is not otherwise its own as a matter of law. The defenses set forth in Part Two are affirmative

defenses. RoyalStar expressly reserves the right to amend or supplement these defenses as discovery proceeds.

**PART ONE – NEGATIVE DEFENSES**

**A. No Covered Cause of Loss.** The Policy is written on the Causes Of Loss – Broad Form, CP 10 20 10 12, which insures only against the causes of loss enumerated in Paragraph A of that form and the Additional Coverage – Collapse. The damage of which Plaintiff complains was caused by wear, tear, deterioration, lack of maintenance, poor construction practices, long-term water exposure, corrosion, and rot—none of which is an insured cause of loss under the Policy. Plaintiff bears the burden of proving that its loss falls within the coverage grant.

**B. No "Abrupt Collapse."** The Additional Coverage – Collapse applies only to an "abrupt collapse," defined as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." No abrupt falling down or caving in occurred.

**C. Collapse Not Caused by a Listed Cause.** Coverage under the Additional Coverage – Collapse requires that the collapse be caused by one or more of the causes listed in Paragraphs C.2.a through C.2.f. No such cause caused any collapse at the insured premises. Tropical Storm Fiona produced sustained winds of approximately 28 knots with gusts to approximately 36 knots at St. Thomas—well below hurricane force—and the roof of the insured premises is substantially sheltered from direct wind exposure by the surrounding structures.

D. **No Ensuing Loss From Any Collapse.** Plaintiff alleges that a collapse of the roof system resulted in water intrusion and consequent interior damage. No water entered the insured premises through any collapse, and no interior or contents damage ensued from any collapse.

E. **Loss Outside the Policy Period.** Plaintiff cannot establish that any collapse or other insured physical loss occurred during the period of insurance, August 31, 2022 to August 30, 2023. Plaintiff cannot carry its burden of establishing that any such collapse occurred on September 17, 2022, or at any other time within the period of insurance.

F. **Windstorm Peril Limitation.** The peril of Windstorm or Hail does not include loss or damage to the interior of any building, or to property inside the building, caused by rain, whether driven by wind or not, unless the building first sustains wind or hail damage to its roof or walls through which the rain enters. The insured premises sustained no wind or hail damage to its roof or walls, and no openings caused by wind were observed. Rain is not a Covered Cause of Loss.

G. **Water Damage Limitations.** The Policy's Water Damage peril does not include loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture, or vapor, occurring over a period of fourteen days or more, nor discharge or leakage from roof drains, gutters, downspouts, or similar fixtures, nor the cost to repair any defect that caused the loss.

H. **Decay Not Hidden From View; Decay Known to Plaintiff.** Coverage for

collapse caused by building decay under Paragraph C.2.b is available only where the decay is "hidden from view" and is not "known to an insured prior to collapse." The deterioration of the insured premises was open, visible, and long-standing, including a worn and torn roof membrane in need of replacement, large vegetation growing from the roof with a root system embedded in the wall masonry, deteriorated and abandoned rooftop equipment, and persistent water intrusion. Plaintiff knew of the decay before any alleged collapse.

**I. Property Standing or In Danger of Falling.** The Additional Coverage – Collapse does not apply to a building or any part of a building that is in danger of falling down or caving in; to a part of a building that is standing, even if separated from another part; or to a building or part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion. Paragraph C.3. The conditions of which Plaintiff complains may fall within these limitations.

**J. Deductible.** Any recovery is subject to the applicable deductible. To the extent Plaintiff establishes that any loss was caused, even in part, by Windstorm, the applicable deductible is five percent of the sum insured.

**K. Limits of Insurance.** Any recovery is capped by the applicable Limits of Insurance, and the Additional Coverage – Collapse does not increase those limits.

**L. Limitation to Plaintiff's Financial Interest.** Under Paragraph E.4.d of the Building and Personal Property Coverage Form, RoyalStar "will not pay you more than your financial interest in the Covered Property." Plaintiff was

administratively dissolved on February 13, 2023, and any recovery is limited to Plaintiff's own financial interest in the Covered Property, exclusive of any interest held by its shareholders, former directors, creditors, or any transferee.

**M. Valuation.** Any covered loss is payable at actual cash value as of the time of loss or damage, in accordance with the Valuation condition and subject to all other Policy terms.

**N. No Consequential or Extracontractual Damages.** Plaintiff is not entitled to consequential, incidental, or extracontractual damages, which were not within the contemplation of the parties and are not recoverable under the Policy or applicable law.

**O. No Waiver by RoyalStar; Claim Presented Was a Windstorm Claim.** RoyalStar has not waived, and is not estopped from asserting, any term, condition, exclusion, endorsement, limitation, or other provision of the Policy, or any right or defense available to it under the Policy, applicable law, or equity, including any not expressly identified in its November 9, 2023 declination or in these defenses. The claim Plaintiff presented was a windstorm claim: Plaintiff's ACORD property loss notice of January 6, 2023 identified the kind of loss as "wind," and the engineering report Plaintiff submitted in support of the claim attributed the damage to wind displacement of the roof membrane and consequent rainfall intrusion. Plaintiff presented no claim for collapse or abrupt collapse at any time during the adjustment of the claim, and first asserted a collapse theory on August 18, 2026, more than three years after it gave notice of

loss. RoyalStar investigated and evaluated the claim Plaintiff presented, and its declination responded to that claim.

**PART TWO – AFFIRMATIVE DEFENSES**

**P. Limited Capacity; Action Not Incidental to Winding Up.** RoyalStar specifically denies that Plaintiff has capacity to prosecute this action beyond the limited purposes permitted by statute. Plaintiff alleges it was administratively dissolved on February 13, 2023. Under 13 V.I.C. § 285, a dissolved corporation is continued as a body corporate only for the purpose of prosecuting and defending actions and of "enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which the corporation shall have been established." A dissolved corporation may accordingly maintain an action only insofar as the action is incidental to the winding up of its corporate affairs. Plaintiff's claims, including its stated intention to repair and restore the insured premises and its claim for damages measured by 2026 replacement cost, exceed the scope of permissible winding-up activity and seek to continue the business for which Plaintiff was established. See Fed. R. Civ. P. 17(b)(2).

**Q. Failure to Prosecute in the Name of the Real Party in Interest.** Upon administrative dissolution for nonpayment of franchise taxes, 13 V.I.C. § 533(c)(1) vests title to the corporation's property in its directors as trustees for its stockholders and creditors. To the extent any chose in action under the Policy is held by Plaintiff's former directors as trustees, this action is not prosecuted in the

name of the real party in interest. Fed. R. Civ. P. 17(a).

R. **Franchise Tax Bar.** To the extent Plaintiff has not paid its annual franchise tax last due, it may not commence or maintain any action in any court. 13 V.I.C. § 533(a).

S. **"Fungus," Wet Rot, Dry Rot and Bacteria Exclusion.** The Policy excludes loss or damage caused directly or indirectly by the presence, growth, proliferation, spread, or any activity of "fungus," wet or dry rot, or bacteria, regardless of any other cause or event that contributes concurrently or in any sequence to the loss. The rot in the roof framing on which Plaintiff's collapse theory depends may fall within this exclusion.

T. **Microorganism Exclusion.** The Policy's Microorganism Exclusion (Absolute) endorsement, LMA5018, excludes any loss, damage, claim, cost, expense, or other sum directly or indirectly arising out of or relating to mold, mildew, fungus, spores, or other microorganism of any type, nature, or description, regardless of whether any insured peril or cause contributed concurrently or in any sequence, and expressly "replaces and supersedes any provision in the Policy that provides insurance, in whole or in part, for these matters."

U. **Existing Damage Exclusion.** The Policy does not cover loss or damage occurring before, or arising from an event before, the beginning of the period of insurance, which commenced August 31, 2022. The deterioration, rot, and corrosion on which Plaintiff's claim depends pre-date policy inception, and are the product of long-term exposure to wet conditions over a period of years.

V. **Neglect.** The Policy excludes loss or damage caused by or resulting from the neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss. Plaintiff permitted water to remain in the insured premises and permitted the premises to deteriorate after the alleged loss and possibly before the alleged loss.

W. **Ordinance or Law.** The Policy excludes loss or damage caused directly or indirectly by the enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, or requiring the tearing down of any property including the cost of removing its debris, and applies whether the loss results from such an ordinance or law enforced even though the property has not been damaged or from the increased costs of complying with it following a physical loss. The Additional Coverage – Increased Cost Of Construction does not apply, because it is available only for buildings to which the Replacement Cost Optional Coverage applies and no Optional Coverage is shown as applicable in the Declarations.

X. **Failure to Give Prompt Notice; Prejudice.** The Policy required Plaintiff to give RoyalStar prompt notice of loss or damage and, as soon as possible, a description of how, when, and where the loss occurred. Plaintiff has the burden of proving compliance with this condition. RoyalStar was actually and materially prejudiced by Plaintiff's delay in reporting the alleged loss and by Plaintiff's failure to accurately describe how the loss occurred. It was deprived of the opportunity to inspect the premises in its post-storm condition, to observe and

document the roof and interior before further deterioration and water intrusion, to identify and preserve evidence bearing on the cause, timing, and extent of the claimed loss, and to mitigate.

**Y. Failure to Comply with Duties in the Event of Loss.** Plaintiff failed to comply with the Duties In The Event Of Loss Or Damage condition, including the obligations to take all reasonable steps to protect the Covered Property from further damage. Compliance with all of the duties is a condition precedent to any obligation of RoyalStar under the Policy.

**Z. Vacancy.** Under the Vacancy condition, a building insured to its owner is vacant unless at least thirty-one percent of its total square footage is used to conduct customary operations. If the building where the loss or damage occurred had been vacant for more than sixty consecutive days before the loss or damage occurred, RoyalStar is not liable for loss or damage caused by water damage, and is entitled to reduce the amount otherwise payable for any other Covered Cause of Loss by fifteen percent. Plaintiff has represented that its principals were not on-island for an extended period encompassing the alleged date of loss and the months following it, and the insured premises were not being used to conduct customary retail operations during that period. Substantially all of the loss Plaintiff claims is water damage.

**AA. Transfer of Rights Without Consent.** Paragraph F of the Common Policy Conditions, form IL 00 17 11 98, provides that the insured's "rights and duties under this policy may not be transferred without our written consent except in the

case of death of an individual named insured." RoyalStar has given no written consent to any transfer of rights or duties under the Policy. To the extent any interest in the Policy, in the claim asserted in this action, or in any proceeds thereof has been assigned, transferred, pledged, or encumbered in favor of any person or entity, including any public adjuster, contractor, consultant, litigation funder, or other third party, such transfer is without effect as against RoyalStar, and no such person or entity may assert rights under the Policy against RoyalStar.

**BB. Coinsurance.** Any recovery is subject to reduction under the Policy's eighty percent Coinsurance Additional Condition. Plaintiff's own damage assessment values the Building loss at $537,750.49 replacement cost, which is inconsistent with the $414,375 Limit of Insurance for Buildings and indicates that Plaintiff failed to insure to the required percentage of value.

**CC. Failure to Mitigate.** Plaintiff failed to mitigate its damages, including by failing to protect the insured premises from further water intrusion and deterioration in the years following the alleged loss, and any recovery must be reduced accordingly.

## RESERVATIONS OF RIGHT

RoyalStar reserves and does not waive its right to demand appraisal of the value of the property and the amount of loss under the Appraisal condition, without waiver of its right to deny the claim. It also reserves the right to assert additional defenses that become available or apparent during discovery and to amend its Answer

accordingly.

**WHEREFORE,** RoyalStar Assurance, Ltd. respectfully requests that the Second Amended Complaint be dismissed with prejudice, that judgment be entered in its favor, and that it be awarded its costs and such other relief as the Court deems just.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for RoyalStar Assurance Ltd.

Dated: August 20, 2026

______________________________
By: Andrew C. Simpson
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com